IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01148-PAB-MJW

SHAWN A. JACKSON,

Plaintiff,

v.

RICHARD WILEY, et al.,

Defendants.

---

**RECOMMENDATION ON
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER;
PRELIMINARY INJUNCTION AND DECLARATORY JUDGMENT
(Docket No. 11)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to United States Magistrate Judge issued by District Judge Philip A. Brimmer on May 28, 2009. Docket No. 5.

Now before the court for a report and recommendation is Plaintiff's Motion for Temporary Restraining Order; Preliminary Injunction and Declaratory Judgment (Docket No. 11) and Memorandum of Law in Support of Plaintiffs [sic] Motion for Injunctive Relief (Docket No. 12), which were filed before any defendants were served with process. In a Minute Order, this court directed defendants to file a response and directed the Clerk of Court to mail a copy of the Minute Order to the United States Attorney's Office in Denver and to a Supervisory Attorney with the Federal Bureau of

2

Prisons. Docket No. 14. Defendant Wiley, in his official capacity as Warden, responded to this court's Minute Order and timely filed a Response to the plaintiff's motion. Docket No. 16. The Response includes a supporting Declaration by Theresa Montoya, a Senior Attorney at the Federal Correctional Complex in Florence, and numerous exhibits. At the time the Response was filed, the docket still did not yet reflect service on any individually-named defendant.[1] Since the plaintiff's motion seeking relief appeared to be directed to the Warden, the Response was filed on behalf of the Warden in his official capacity only. See Docket No. 16 at 1 n.1.

The court has carefully considered the plaintiff's motion, memorandum in support, the Warden's Response, and applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions, and recommendation.

Because the plaintiff is proceeding without counsel, the court has construed his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court, however, should not be the *pro se* litigant's advocate, nor should the court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing Hall, 935 F.2d at 1110).

---

[1] Service has since been waived by defendants Martinez and Osagie. Docket Nos. 17 and 18. The waiver form for defendant Schiefelbein was returned to the court because that defendant is no longer employed at the Federal Correctional Complex in Florence nor with the Federal Bureau of Prisons. Docket No. 8.

3

The *pro se* incarcerated plaintiff is housed in a Control Unit[2] in the administrative maximum federal prison ("ADX") in Florence, Colorado. He claims the defendants have used their authority in oppressive and retaliatory manners to create atypical and significant hardships upon him to discriminate against him by taking disciplinary actions against him, requiring him to languish inside his Control Unit cell for forty months without meaningful self-bettering programs or activities, confining him under extreme sensory deprivations, and denying him the benefits of privations of his faith (i.e., spiritual help, religious programming, freedom of association). He claims "his custodians have subjected him to harassments for the purposes of exasperating him into bickering, so they could justify making ordinary impermissible conduct, permissible . . .; further, whenever custodians were unable to get a wanted/desired reaction from Plaintiff, infractions were falsified against him, and sanctions imposed. This being to: thwart his efforts to maintain clear conduct; augment sanctions; prevent program participation;

---

[2]Plaintiff's Exhibit A shows that he was approved for Control Unit placement in December 2006 based upon a serious assault on a staff member plaintiff committed at Pollock, Louisiana, which was summarized as follows:

> you struck a correctional officer twice in the jaw for no apparent reason, then chased the victim officer and began to kick and strike him in the upper torso areas. While the victim officer was on the ground defending himself, you assaulted him with a prison-made, metal ice pick type weapon. You attempted to stab the officer in the upper torso, but the victim officer blocked the blows and was stabbed in the arm. As responding staff arrived, you ran back in the housing unit, with the weapon still in hand. When you were cornered by staff, you continued to brandish the weapon at the staff members despite being ordered to relinquish the weapon. As a result of this incident, you were found to have committed the prohibited acts of Assaulting with Serious Injury, code 101, and Possession of a Dangerous Weapon, code 104.

Docket No. 12 at 17.

4

and, to increase projected control until team." Docket No. 11 at 4 (footnote omitted).

The relief plaintiff requests in his motion is a court order that:

> (1) Defendants cease their arbitrary and unpromulgated practices of using (or manipulating) their existing policies, e.g. P.S. 5212.07 Control Unit Programs, P.S. 5370.10 Recreation Programs, P.S. 5270.07 Inmate Discipline & SHU, P.S. 5300.18, P.S. 5300.21, in an unconstitutional manner to deny prisoners of their rights and privileges under the Constitution, Laws and Regulations of the U.S. **Compel them to adhere to the Constitution and permit all prisoners with the opportunity to participate in Religious and other meaningful self bettering programming, as provided by the institution through their close circuit station (television)**; even so custodians must have to revert to their progenitors procedure of equiping [sic] prisoners with available television sets with programmed "restricted stations", for program participation. As there is no existing policy (or policies) which authorizes television/radio restrictions but P.S. 5270.07 Inmate Discipline authorizes "movie restriction" but that does not mean "television restriction" or "radio restriction." However, according P.S. 5212.07 Control Unit Programs that "criteria" where restriction or removal of a control unit inmate is possible, this policy states: 'Televisions and radios may be provided within a control unit, consistent with security and good order. Abuse or damage of television rules or equipment will be grounds for individual limitations on the use or removal of the television." And of course if an inmate is on disciplinary segregation (D.S.) he is automatically restricted from TV/radio until D.S. is complete or warden authorizes.

Docket No. 11 at 8 (footnote omitted) (emphasis in bold added).

Defendant Wiley, in his official capacity, responds that the motion should be denied for failure to exhaust[3] and because the requirements for a TRO, preliminary injunction, or declaratory judgment have not been established.

"A temporary restraining order ["TRO"] or preliminary injunction is extraordinary relief." Statera, Inc. v. Hendrickson, 2009 WL 2169235, *1 (D. Colo. July 17, 2009). Injunctive relief should be granted only when the moving party clearly and unequivocally

---

[3]Defendant's Response merely makes the non-exhaustion argument in the opening paragraph and does not expand upon it thereafter. See Docket No. 16 at 1.

5

demonstrates its necessity. See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, the party requesting injunctive relief must establish that: (1) the party will suffer imminent and irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. Id. "In addition to the foregoing factors, a party seeking a [TRO] also must demonstrate clearly, with specific factual allegations, that immediate and irreparable injury will result absent a temporary restraining order." Statera, 2009 WL 2169235, *1.

Furthermore, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, . . . [the Tenth Circuit has] identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits." Schrier, 427 F.3d at 1258-59 (citation and quotations omitted).

This court also "considers well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . . Courts should grant injunctive relief involving the management of prisons . . . only under exceptional and compelling circumstances." Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009) (citations omitted).

Defendant Wiley contends that there is no substantial likelihood that plaintiff will prevail on the merits. He notes in his response that plaintiff has an extensive

disciplinary history, including an assault on staff. Due to a disciplinary violation, plaintiff has lost the use of television and radio privileges.[4] Furthermore, defendant notes that both 28 C.F.R. § 541.13 (Table 4, 2(b)) and Program Statement 52107-07 permit this forfeiture of privileges. Defendant asserts that plaintiff has not satisfied his burden of presenting sufficient evidence to suggest that his conditions of incarceration impose a "substantial risk of serious of serious harm." Defendant further notes that plaintiff offers his own conclusory allegations, for example, stating that he is being subjected to "extensive sensory deprivation" and is in "dangerous idleness to decompensate," and contends that plaintiff's speculation, alone, is insufficient to support a preliminary injunctions. Furthermore, defendant asserts that plaintiff's First and Fifth Amendment claims are insufficient because plaintiff does not allege facts showing any constitutional deprivation. Defendant points out that plaintiff does not allege that he is being deprived of all reading materials or of all religious observances and points out that the Declaration of Ms. Montoya notes that plaintiff has other options in order to participate in religious practice other than the television viewing. In addition, defendant contends that

---

[4]Plaintiff's Exhibit F shows that plaintiff lost 275 days of commissary, visiting, and TV/radio as a result of destroying property over $100 and threatening. Docket No. 12 at 34. The report of the evidence relied upon to support the findings of that disciplinary finding indicates that while an officer was removing plaintiff's hand restraints, plaintiff pulled away, ripping the restraints key and holder off the officer's chain, trying to pull the officer to the cell front. Plaintiff began yelling that he was going to kill him and "shit down any staff he gets a chance to." Staff remained in front of plaintiff's cell to watch him, and while talking to the Lieutenant, plaintiff broke the fire sprinkler in his cell, which disabled the entire system in the unit. Docket No. 12 at 34.

Plaintiff's Exhibit G shows that plaintiff's TV/radio privileges were suspended an 30 additional days on July 23, 2008, after plaintiff was found to have committed the prohibited act of Destruction of Government Property, Code 218. Docket No. 12 at 36.

7

plaintiff has not shown that defendants have acted with deliberate indifference to his safety and has not shown and Eighth Amendment violation. Also, defendant asserts that plaintiff cannot show that he is likely to prevail because of the relief sought.

This court finds that plaintiff has not met his burden of showing a substantial likelihood that he will prevail on the merits. Plaintiff in essence seeks restoration of certain television and radio programming privileges, which as can be seen by various exhibits attached to the response, were suspended as a disciplinary sanction for committing various offenses at ADX, i.e., indecent exposure, being insolent to staff, being unsanitary or untidy, destroying property over $100, and disruptive conduct. Docket No. 16-2 at 3, Montoya Decl. ¶ 7. It appears plaintiff's complaint through various grievances and appeals was that he did not abuse the TV privilege or damage TVs, which he believes is the only criteria for removal of such privileges. Plaintiff misreads the Policy Statements and regulations which do not limit loss of privilege sanctions to actions that are related to the privilege itself. See Docket No. 16-2 at 3, Montoya Decl. ¶ 6. Montoya states in her Declaration, "the DHO or UDC may impose a loss of privilege sanction not directly related to the offense when there is a lack of other appropriate sanctions or when imposition of an appropriate sanction preciously has been ineffective." Docket No. 16-2 at 3, Montoya Decl. ¶ 6.

In any event, even if that were not the case, such a deprivation does not amount to cruel and unusual punishment. Portier v. Defusco, 2009 WL 823551, *3 (D. Colo. Mar. 27, 2009) (deprivation of a loner TV set for 495 days[5] while in solitary confinement,

---

[5]Plaintiff here alleges loss of TV/radio privileges for a shorter period of time, namely, 440 days. See Docket No. 12 at 2.

allegedly seriously impacting inmate's mental health, did not constitute cruel and unusual punishment) (citing Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995) (finding "no support in the case law" for claim that denial of "cigarettes and television amounts to a constitutional violation"); James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir. 1992) ("a prisoner who is denied . . . a television set has not set out a deprivation of [his rights under] . . . the eighth amendment"); Scheanette v. Dretke, 199 Fed. Appx. 336 (5th Cir. 2006) (denial of televisions to death row inmates not cruel and unusual because watching television is not a life necessity or a basic human need); Elliott v. Brooks, 188 F.3d 518, 199 WL 525909 (10th Cir. 1999) (no constitutional right to watch television in prison)). See Sattar v. Gonzales, 2009 WL 606115, * 3 (D. Colo. Mar. 6, 2009) (Severe limitations of confinement in ADX in Florence alone do not constitute an Eighth Amendment violation.).

Furthermore, "it is well settled that the inability of a prisoner to watch television is not an atypical, significant hardship." Portier v. Defusco, 2009 WL 823551, *3 (citing King v. Frank, 328 F. Supp. 2d 940, 945 (W.D. Wis. 2004) ("being denied a television and radio" not atypical and significant deprivation under *Sandin* [*v. Conner*, 515 U.S. 472, 486 (1995)]); Manley v. Fordice, 945 F. Supp. 132, 138 (S.D. Miss. 1996) ("not being allowed access to television and radio is not 'atypical' of prison life and certainly places no significant hardship on the individual"); Robinson v. Moses, 644 F. Supp. 975, 979 (N.D. Ind. 1986) (holding detainee in city-county lockup without television facilities not a violation of Fourteenth Amendment)).

In addition, as shown by defendant Wiley, there are other methods of programming and religious services other than through the television and radio.

9

Montoya states in her Declaration that "[w]hen an inmate's television privileges are restricted, the inmate cannot receive religious or education programs via the television. Rather, the inmate must submit requests to education, psychology or religious services staff requesting to check out reading material. . . . The plaintiff also has opportunities to engage in religious services by having visits with the institution chaplain at his cell. In addition, the plaintiff may speak to Psychology staff during rounds or by submitting a request to the Psychology Department." Docket No. 16-2 at 54, Montoya Decl. ¶¶ 8, 9. It appears even from plaintiff's motion itself that plaintiff has, at least on occasion, availed himself of other methods of programming. See, e.g., Docket No. 12 at 7 (plaintiff stating he "maintained clear conduct July 9, 2008 to January 20, 2009, **including taking anger management course (written)** . . . .") (emphasis added).

In sum, this court finds that plaintiff has not established a likelihood of success on the merits of his First, Fifth, and Eighth Amendment claims that are based upon his denial of radio and television privileges. Therefore, the court need not address the other requirements for the issuance of an injunction.

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that Plaintiff's Motion for Temporary Restraining Order; Preliminary Injunction and Declaratory Judgment (Docket No. 11) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive,**

10

**or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: July 28, 2009           s/ Michael J. Watanabe
     Denver, Colorado          Michael J. Watanabe
                                                         United States Magistrate Judge